**GIFT OF LEARNING FOUNDATION, INC., d.b.a. Kids Golf, Plaintiff–Appellant,**

v.

**TGC, INC., Defendant–Appellee,**

**Adelphia Cable Communications, AT&T Cable, et al., Defendants.**

No. 01–16717.

United States Court of Appeals, Eleventh Circuit.

April 24, 2003.

Roy R. Watson, West Palm Beach, FL, Frank A. Cona, Schrafer, Harrison, Segal & Lewis, LLP, Philadelphia, PA, for Plaintiff–Appellant.

Donald J. Hayden, Jonas Craig Packer, Baker & McKenzie, Miami, FL, John C. Filosa, Baker & McKenzie, Chicago, IL, for Defendant–Appellee.

---

Before TJOFLAT and BARKETT, Circuit Judges, and WEINER*, District Judge.

## PER CURIAM:

The judgment in this case is affirmed for the reasons stated in the district court's well-reasoned order issued on October 29, 2001, and attached hereto as an appendix.

AFFIRMED.

## APPENDIX

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the court upon defendant The Golf Channel's motion for summary judgment. This case involves a suit brought by Gift of Learning Foundation, Inc. (GOLF) d/b/a Kids Golf, which operates DRIVE PITCH & PUTT, an international golf skills competition for children, against The Golf Channel, Inc. (TGC) for trademark infringement because of the latter's use of the term "Drive Chip & Putt" in connection with its own skills challenge. Kids Golf brought suit under 15 U.S.C. § 1125(a) (Lanham Act), Fla. Stat. § 501.201 *et seq.* (Florida Deceptive and Unfair Trade Practices Act), and Florida common law, and seeks declaratory relief. Defendant has moved for summary judgment on all counts on the grounds that the term DRIVE PITCH & PUTT is a descriptive term that has not acquired a secondary meaning, and therefore Kids Golf lacks a protectible interest in the term. After consideration of the motion, argument of counsel, relevant case law, and the record evidence viewed in the light most favorable to the plaintiff, defendant's motion for summary judgment will be granted.

\* Honorable Charles R. Weiner, United States District Judge for the Eastern District of

\* \* \*

## BACKGROUND

Plaintiff Kids Golf is a Florida corporation. Kids Golf operates Kids Golf's DRIVE PITCH & PUTT, an international golf skills challenge that is open free to all children. The program features a driving, pitching, and putting competition and a rules and etiquette test. Kids Golf states that the skills challenge has been conducted by it as a continuous annual event since 1993 until the present. Competitions began locally in West Palm Beach, Florida, and have expanded throughout the United States and worldwide. Plaintiff's competition is partnered with, associated with, or supported by many leading golf industry and children's organizations, including the Professional Golfer's Association of America (PGA), the National Association of Junior Golfers, Junior Golf World (U.K.), the Boys and Girls Clubs of America, the Police Athletic League, and various city and county departments of parks and recreation.

Plaintiff claims that it has been using DRIVE PITCH & PUTT in connection with its internet web site to provide information about its junior golf skills challenge continuously since at least as early as March 1996. The Kids Golf web site currently averages about 200,000 hits per month, and had nearly 2 million hits in 2000. About 500 different web sites are known to link to the Kids Golf web site.

Kids Golf claims that it is the owner of its DRIVE PITCH & PUTT trademark and has five U.S. Trademark applications pending before the United States Patent and Trademark Office for federal registration

Pennsylvania, sitting by designation.

of its purported trademark. Kids Golf claims that its trademark is inherently distinctive, and that its extensive and continuous use of the trademark throughout the United States and jurisdictions covered by the Lanham Act has created "significant secondary meaning for the mark." Plaintiff further contends that it has expended a significant amount of time and money to establish the tremendous goodwill and value it has achieved in the DRIVE PITCH & PUTT trademark.

Defendant TGC is a Delaware corporation with its principal place of business in Orlando, Florida. TGC operates a cable television network of golf-related programming, which is available throughout the United States, Canada, and Asia through cable, satellite, and wireless television providers. Plaintiff claims that in 1998, defendant, with full knowledge of plaintiff's prior adoption and extensive use of the DRIVE PITCH & PUTT trademark, created a competing junior skills challenge under the name Drive Chip & Putt. TGC has held its Drive Chip & Putt competitions in 1999 and 2000. Plaintiff originally also filed suit against numerous cable television providers based in various locations around the country that announced their intention to promote TGC's competing skills challenge, but has since voluntarily dismissed its claims against them.

Plaintiff states that in 1993 it created the DRIVE PITCH & PUTT golf skills competition. James Mallamo, president and C.E.O. of Kids Golf, modeled the competition after the successful branding campaign of the NFL's federally-registered Punt Pass & Kick competition. Kids Golf's goal was to create a highly-recognized branded competition that would benefit the game of golf by allowing children to compete nationally and internationally, thereby creating significant value to corpo-rations and other sponsors. In 1993, 1994, and 1995, Kids Golf promoted, organized, and conducted its DRIVE PITCH & PUTT competition in West Palm Beach, in association with WPTV, Channel 5, West Palm Beach, an NBC affiliate.

Plaintiff claims that while the competition was held locally in the West Palm Beach area for the years 1993, 1994, and 1995, it made considerable efforts to develop and promote the competition. Revenues for the local competition from sponsors were between $40,000 and $50,000 annually, with expenses nearly equal to revenue. Jack Nicklaus agreed to be the honorary chairman, and television spots were aired on WPTV. Kids Golf says it intended ultimately to launch its program nationally and internationally.

On September 9, 1994, Mr. Mallamo filed a trademark application with the U.S. Patent and Trademark Office for Kids Golf DRIVE PITCH & PUTT and design. Kids Golf abandoned its application on September 19, 1995. In November 1995, Kids Golf learned that the application for the trademark and design was rejected by the trademark office because there was a prior application and registration to Ryder Systems for the mark "Pitch Putt & Drive." Ryder Systems conducted a competition for children under the mark Pitch Putt & Drive in conjunction with their sponsorship of the Ryder Doral Open, a PGA Tour event in Miami, Florida. On October 5, 1998, the trademark office cancelled the Ryder Systems mark. Ryder no longer sponsors the tour event and no longer conducts a kids' competition.

In 1996, Kids Golf and the Jack Nicklaus company known as Golden Bear International, Inc., its partner since 1993, promoted and organized the DRIVE PITCH & PUTT competition on a national basis. In January 1996, the idea of a national DRIVE PITCH & PUTT competition was presented to

the executives of the National Association of Television Program Executives at a conference in Las Vegas. Around that time, Kids Golf and Golden Bear had reached a tentative agreement with Compuserve to be the exclusive title sponsor of the Kids Golf competition. In May 1996, Compuserve stated that it would be unable to honor its commitment as sponsor. By then it became too late to obtain other sponsors or negotiate contracts with the 11 television stations that had expressed interest following the presentation to the NATPE executives. Kids Golf was thereby unable to conduct a national competition in 1996. TGC states that by October 1996, it had already started to develop its own junior golf skills competition.

Kids Golf states that since 1996, it has continued to promote and advertise its competition on a national level. Kids Golf states that in 1997, its competition returned on a national level and that there have been competitions on a national level each year since then. In 1997, the competition was held in seven locations in five states; in 1998 in at least eight locations in seven states; in 1999 in 24 locations in 16 states, and Sweden and Germany; in 2000 in at least 36 locations in 21 states, and two foreign countries. Competitions are continuing in the year 2001. By 2000, the number of competition participants increased to approximately 1,200.

Kids Golf states that it has continuously advertised and promoted the DRIVE PITCH & PUTT competition through various media, including magazines and journals with national distribution to the golfing industry and general public, such as the PGA Journal, Golf Illustrated Magazine, Junior Golf Magazine, U.S. Kids Magazine, and the National Recreation and Parks Association Magazine. The competition has been promoted on radio and television, including a promotion on TGC's program "Golf Academy Live" on April 9, 1997. Kids Golf "DRIVE PITCH & PUTT" has been exhibited and promoted annually at the PGA Merchandise Show in Orlando, Florida, since 1999.

Kids Golf states that it has corresponded and consulted with individuals and organizations that are leaders in the golf industry. It claims a close relationship with PGA of America, the National Association of Junior Golfers, and other organizations. It states that since 1999 it has had an exclusive alliance agreement with the NAJG that includes approximately 4,5000 junior golf directors. In the last two years, there has been a direct mailing to the directors of the NAJG promoting the Kids Golf competition.

On January 9, 1998, TGC filed a trademark application for the mark Drive, Chip & Putt & design. The trademark office issued an office action and required TGC to disclaim the descriptive wording Drive, Chip & Putt. TGC changed its logo, and on August 24, 1998, filed an application for Drive, Chip & Putt & design with the new logo. Both logo designs contain the words The Golf Channel's Drive, Chip & Putt Jr. Golf Skills Competition. On November 9, 1998, the trademark office issued an office action and again required TGC to "disclaim the descriptive wording ... Drive, Chip & Putt." On May 7, 1999, TGC responded and accepted the trademark examiner's requirement that it disclaim the exclusive right to use Drive, Chip & Putt in its design mark.

In early February 1998, Mr. Mallamo first learned that there was a possibility that TGC was about to launch a golf skills competition for children. He contacted TGC and asked for a media kit. Approximately three days later, he received a call from a woman, Carol Lint of TGC, who said that TGC was interested in securing a

partnership agreement with Kids Golf. Mr. Mallamo sent a proposal letter to TGC on February 20, 1998, and sent follow-up letters on March 18 and April 10, 1998. The letters included videos showing the history and development of Kids Golf's competition. Plaintiff claims that TGC never scheduled a proposed dinner meeting between Mr. Mallamo and David Manougian, TGC's senior vice president for sponsorship sales and marketing, to discuss the partnership agreement, or responded to Mr. Mallamo's letters or telephone calls.

On August 4, 1998, TGC held its first The Golf Channel's Drive, Chip & Putt Jr. Golf Skills Competition in Omaha, Nebraska, in conjunction with the Omaha Classic, an event on the Nike Tour. That was the date on which TGC first began using its Drive, Chip & Putt trademark in connection with junior golf skills competitions. TGC's held a second competition using the Drive, Chip & Putt mark in Orlando, Florida on November 14, 1998.

Mr. Mallamo states that in December 1998, he received a telephone call from Rob Flynn, a managing director of marketing and communications at TGC. Mr. Flynn said TGC had an interest in Kids Golf DRIVE PITCH & PUTT and asked if Mr. Mallamo could make a presentation to TGC. Mr. Mallamo told him that he had earlier been in contact with Ms. Lint. Mr. Flynn requested an updated version of the previous proposal, which Mr. Mallamo sent to TGC on December 18, 1998. Mr. Mallamo says that he has never heard from TGC again.

In March 1999, TGC issued a press release advising that it was about to launch a competition for junior golfers to be called "The Golf Channel's Drive Chip & Putt." In 1999, approximately 30 of TGC's competitions were held throughout the nation, and there were approximately 3,000 participants. In May 1999, Kids Golf reapplied to the trademark office for the mark "Kids Golf DRIVE PITCH & PUTT" and design, and for the mark "DRIVE PITCH & PUTT." According to plaintiff, its applications are still pending.

Kids Golf claims that it has actively taken action against all known infringers of its mark to protect its use of the DRIVE PITCH & PUTT mark. Mr. Mallamo learned of two other junior skills competitions that were allegedly infringing on the DRIVE PITCH & PUTT mark: one competition based in California using the name "Putt Pitch & Drive" and another based in New York under the name "DRIVE PITCH & PUTT." Plaintiff says that in 1999, it sent cease-and-desist letters to those organizations and TGC. The California and New York operations ceased, but TGC continued to promote and conduct competitions under the mark "Drive Chip & Putt."

Since 1999, TGC has conducted their Drive Chip & Putt competition on a yearly basis. In 2000, about 6,000 persons participated in approximately 75 of TGC's competitions held throughout the United States. In 2001 to date, about 8,000 participants took part in more than 75 competitions throughout the country.

Kids Golf claims that "[t]here is now a tremendous amount of actual confusion in the golfing industry and public with "DRIVE PITCH & PUTT" and "Drive Chip & Putt"." Plaintiff contends that the golfing industry and public, particularly the relevant golfing public, has been calling and e-mailing Kids Golf based upon TGC's advertised competition, and that Kids Golf has received more e-mails and calls for TGC's competition than for its own.

On January 22, 2001, Kids Golf filed a complaint with this court against the defendant.

## DISCUSSION

\* \* \*

Kids Golf argues that it has a protectible interest in its DRIVE PITCH & PUTT trademark. Plaintiff states that the mark is protectible because it is inherently distinctive as a brand, and because Kids Golf has acquired secondary meaning in the mark through its "significant" efforts to promote the mark in the relevant golf and youth communities and organizations. Plaintiff contends that the value of the mark is demonstrated by the intentional copying of the mark by TGC and the tremendous confusion created thereby. Plaintiff claims that TGC's continued use of the Kids Golf mark threatens to put Kids Golf out of business.

Kids Golf has brought a four-count complaint against TGC alleging that defendant's use of the designation Drive, Chip & Putt in conjunction with The Golf Channel's Drive, Chip & Putt Jr. Golf Skills Competition infringes on Kids Golf's DRIVE PITCH & PUTT trademark. The complaint alleges as follows: 1) Count I—Lanham Act claim of trademark infringement; 2) Count II—Fla. Stat. § 501.201 *et seq.* claim of violation of Florida unfair competition statute; 3) Count III—Florida common law unfair competition and unfair business practices claim; 4) Count IV—prayer for declaratory relief.

Plaintiff seeks declaratory judgment against defendants, declaring that the trademark DRIVE PITCH & PUTT is inherently distinctive, or that it has acquired secondary meaning as used by Kids Golf; that Kids Golf is the owner and prior user of the trademark DRIVE PITCH & PUTT; and that defendants have damaged plaintiff's rights in the name, trademark, and skills challenge, and also seeks a permanent injunction enjoining defendants from making any commercial use of Kids Golf's mark, damages, costs, and attorney's fees.

### 1. Lanham Act Claim

Trademarks are "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods . . . from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. A plaintiff seeking to prevail on a trademark infringement claim must show 1) that he had a valid trademark and 2) that the defendant had adopted an identical or similar mark such that consumers were likely to confuse the two. *See* 15 U.S.C. § 1125(a); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 106 F.3d 355, 358 (11th Cir.1997).

Kids Golf does not own a federal trademark registration for DRIVE PITCH & PUTT, either alone or in connection with any other words or design. However, registration of a trademark is not a prerequisite to an action under the Lanham Act. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Defendant argues that before Kids Golf can recover under any of its federal, state, or common law claims and before a court engages in a likelihood of confusion analysis, Kids Golf must show that it has a protectible interest in the trademark. *See Investacorp, Inc. v. Arabian Investment Banking Corp. (Investcorp) E.C.,* 931 F.2d 1519, 1522 (11th Cir.1991). Kids Golf must, at a minimum, demonstrate that DRIVE PITCH & PUTT is descriptive and has acquired secondary meaning. *See Two Pesos,* 505 U.S. at 769, 112 S.Ct. 2753.

Trademarks are classified into four categories, in order of increasing strength: 1) generic—marks that suggest the basic nature of the product or service; 2) descriptive—marks that identify the characteristic or quality of a product or service; 3) sug-

gestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and 4) arbitrary or fanciful—marks that bear no relationship to the product or service, and the strongest category of trademarks. *See Frehling Enter., Inc. v. International Select Group, Inc.,* 192 F.3d 1330, 1335 (11th Cir.1999); *Investacorp,* 931 F.2d at 1522. The distinction between descriptive and generic terms is a matter of degree. *See American Television & Communications Corp. v. American Communications & Television, Inc.,* 810 F.2d 1546, 1548–49 (11th Cir.1987). Since a descriptive term is not inherently distinctive, it is protectible only if it acquires secondary meaning. *See id.* at 1548.

### a. "Inherently Distinctive" or Merely Descriptive

Defendant argues that DRIVE PITCH & PUTT is at best a descriptive term. The extent to which third parties use a mark is probative evidence of descriptiveness. *See Frehling,* 192 F.3d at 1336, *Investacorp,* 931 F.2d at 1523. According to TGC, the evidence demonstrates a number of third party users of designations which combine terms describing the names of shots in the game of golf. The trademark office's records show at least seven other attempts to register marks which include various combinations, including "America's Drive, Pitch and Putt" and "Drive Chip and Putt." Ryder Systems registered and used a stylized trademark, Pitch, Putt Drive, from 1982 until it abandoned it in 1998. The trademark office has also identified a number of third-party users of similar designations during the prosecution of one of these trademark applications.

Defendant TGC contends that the trademark office has consistently treated all trademarks that include combinations of words describing golf shots as descriptive marks that are only registerable upon a showing of secondary meaning, or, if registered in connection with a design, and then only with a disclaimer of the exclusive right to use the words. The trademark office indicated to Kids Golf that DRIVE PITCH & PUTT is not registerable as a trademark unless it was in connection with some other symbol, such as the Kids Golf logo, and then only where the exclusive use of "drive, pitch, and putt" was disclaimed. Disclaimers are evidence that a term is descriptive. *See Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1564—65 n. 1 (Fed.Cir.1987). According to TGC, Kids Golf has conceded that DRIVE PITCH & PUTT is a descriptive term. Defendant states that Mr. Mallamo has conceded that drive, pitch and putt was merely descriptive of Kids Golf's junior golf competition, and that despite his knowledge of the use of trademark symbols, Kids Golf did not use the "TM" symbol with DRIVE PITCH & PUTT.

Kids Golf claims that on its face, its DRIVE PITCH & PUTT trademark is inherently distinctive and therefore entitled to protection. Plaintiff claims that its mark is instantly recognizable as a brand, like the National Football League's "Punt Pass & Kick" mark for its competitions. Plaintiff points out that the trademark office has previously found the NFL's "Punt Pass & Kick" mark, and Ryder's "Pitch Putt & Drive" mark were inherently distinctive without a need for a disclaimer. It also argues that it has had substantially exclusive use of its trademark, which in turn is strong evidence of its protectibility. Kids Golf notes that the seven federal trademark applications are not proper evidence of third-party usage because six of them

were filed based upon an intent to use the mark, not upon any actual use. Plaintiff adds that TGC's evidence of other party usage is strong evidence of the exclusivity and distinctiveness of Kids Golf's mark because some of the other competitions were isolated, one-day events, and Kids Golf convinced two of the competitions to desist. Plaintiff contends that other than the isolated uses discussed, it is not aware of any other golf competitions using the DRIVE PITCH & PUTT trademark, or variations thereof, over the past eight years.

However, the evidence demonstrates that Kids Golf's mark DRIVE PITCH & PUTT is merely descriptive and not "inherently distinctive." First, the words in the mark are the names of golf shots, and some combination of them is often used to describe a skills competition. The terms are merely descriptive of the activities taking place in Kids Golf's competitions. It would seem that based on that fact alone, plaintiff is unable to prove that its mark is inherently distinctive, rather than merely descriptive.

Second, regardless of whether the trademark applications seeking to register marks using such terms were based on "intent to use" or actual use, the trademark office has consistently taken the position that such terms may not be used as a mark unless the applicant demonstrates that they have acquired secondary meaning, or are used in conjunction with a logo and where the exclusive use of the terms is disclaimed. In light of this consistent approach taken by the trademark office, the fact that nearly all of the other attempted applications were abandoned prior to a determination by the Trademark Trial and Appeal Board, or that a final decision has not been made on Kids Golf's applications to trademark the term DRIVE PITCH & PUTT, is of minimal evidentiary significance.

Third, the evidence of various competitions being held around the country using variations of the terms drive, pitch, and putt, regardless of how long or "isolated" the competitions were, indicates that the use of these terms in connection with golf skills challenges is not a particularly innovative idea. The use of these words suggests that they are part of the public realm and are routinely used to describe such skills contests. Defendant has introduced evidence of seven separate competitions using some combination of the terms "putt," "pitch," and "drive" in Arizona, California, Colorado, Florida, and South Carolina. Kids Golf refers to these other competitions as minimal or isolated, but those words could also be used to describe the nature and extent of Kids Golf's competitions prior to August 4, 1998, which involved about 300 participants each. Moreover, the fact that plaintiff was able to threaten two competitions to desist is not probative evidence of whether it could claim exclusive use of the mark in the first place.

Finally, as defendant persuasively indicates, the Ryder and NFL trademark cases are entirely distinguishable and do not provide support for plaintiff's case. Ryder's trademark for DRIVE PITCH & PUTT was stylized. Moreover, since Ryder's first claimed use of the mark was in January 1982 and it filed its trademark application on September 4, 1990, more than five years later, it was able to take advantage of the Lanham Act's presumption that proof of substantially exclusive and continuous use over five years is indicative of secondary meaning. *See* 15 U.S.C. § 1052(f). As for the NFL mark, the NFL began using the Punt Pass & Kick trademark in 1961, almost 30 years prior to its application in 1990. Like Ryder, the NFL was able to take advantage of the Lanham Act presumption.

Moreover, it is difficult for Kids Golf to claim it had substantially exclusive use when all parties recognize that Ryder claimed a first use of its mark in 1982 and only abandoned its registered trademark in late 1998. By then, TGC had already initiated its own trademark applications for Drive Chip & Putt and had held a competition by that name. While Kids Golf is correct in its assertion that the relevant inquiry is not whether Ryder held its trademark until late 1998, but whether it used it, the evidence indicates that Ryder used its trademark for its youth competition at least through 1995. As such, the relevant window of time for which Kids Golf can argue that it had substantially exclusive use of the mark has been narrowed to about three years. For at least one of those years, Kids Golf did not hold competitions at all, and therefore did not reach the relevant consuming public. Therefore, this court finds that Kids Golf's mark is merely descriptive. We proceed to consider whether plaintiff can demonstrate that the term DRIVE PITCH & PUTT has acquired secondary meaning.

### b. Secondary Meaning

Defendant states that because DRIVE PITCH & PUTT is a descriptive trademark, it is only protectible if it has acquired secondary meaning. See Investacorp, 931 F.2d at 1522. Secondary meaning is the connection in the consumer's mind between the mark and the product's producer. See University of Florida v. KPB, Inc., 89 F.3d 773, 777 (11th Cir.1996). Kids Golf must demonstrate that its mark acquired secondary meaning before TGC began to use its Drive Chip & Putt trademark on August 4, 1998. See J.T. McCarthy, McCarthy on Trademarks and Unfair Competition § 16:34 (4th ed. 1997) ("[T]he senior user must prove the existence of secondary meaning in its mark at the time and place the junior user first began use of that mark."). The Eleventh Circuit has held that a plaintiff has the burden of sustaining a high degree of proof establishing secondary meaning for a descriptive term. See Investacorp, 931 F.2d at 1525.

TGC notes that Kids Golf has no consumer evidence survey. However, such evidence is not required to prove secondary meaning. See Aloe Creme Labs., Inc. v. Milsan, Inc., 423 F.2d 845, 849 (5th Cir.1970). In the absence of consumer survey evidence, the Eleventh Circuit considers four factors to determine whether a particular mark has acquired secondary meaning: 1) the length and manner of its use; 2) the nature and extent of advertising and promotion; 3) the efforts made by plaintiff to promote a conscious connection in the public's mind between the name and plaintiff's business; and 4) the extent to which the public actually identifies the name with plaintiff's goods and services. See Investacorp, 931 F.2d at 1525.

Defendant notes that while Kids Golf began using its mark in June 1993, there have been few competitions and very few participants in each of these competitions. In 1993, one competition was held in West Palm Beach, with only 250 participants. In 1994, there was only one competition held in West Palm Beach with only 300 participants. In 1995, there was only one event, again held in West Palm Beach, with only 300 participants. There were no participants in 1996. In 1997, there were competitions in seven locations in five states with only 250 participants. On August 4, 1998, TGC began using its mark in connection with its Drive, Chip & Putt Jr. Golf Skills Competition. In 1998, Kids Golf held competitions in nine states with a total of 200 children.

Defendant argues that the nature and extent of Kids Golf's promotion and sales demonstrates that plaintiff's mark had not achieved secondary meaning. In 1993, 1994, and 1995, while Kids Golf spent between $6,000 and $8,000 to run a one-day competition in West Palm Beach, none of these expenses were for marketing or advertising. The revenue generated, which roughly equaled the expenses, was limited to $6,000–$8,000 in licensing fees. All the licensing fees were paid by local sponsors of the three events. In 1996, 1997 and 1998, Kids Golf's marketing expenses were no more than $10,000 annually. In 1996 and 1998, it had no revenue. In 1997, Kids Golf had nominal revenue of $100–150 from admissions fees. Kids Golf was also unable to attract the 10,000–12,000 participants it believed it needed to obtain a major corporate sponsorship.

TGC contends that since Kids Golf had little or no success in promoting itself, as measured by advertising and marketing expenditures and revenue, plaintiff has not demonstrated a connection between the mark and the plaintiff's business. TGC further contends that Kids Golf has produced no evidence that the participants in the competitions associate DRIVE PITCH & PUTT with Kids Golf.

Plaintiff responds that its mark has acquired secondary meaning in the minds of the relevant public. Plaintiff notes that the relevant buyer is not the general public or children in particular, but the golf and youth organizations to which the program is marketed. Kids Golf, citing *Popular Bank of Florida v. Banco Popular de Puerto Rico*, 9 F.Supp.2d 1347, 1357 (S.D.Fla.1998), argues that circumstantial evidence alone is sufficient to support a finding that a trademark has acquired secondary meaning. Plaintiff claims that it has such circumstantial evidence in the form of 1) the intentional copying of the mark by TGC; 2) the tremendous confusion created; 3) the extensive use of the mark among relevant golf and junior golf communities; 4) the comprehensive advertising and promotion of the DRIVE PITCH & PUTT trademark; and 5) the significant efforts it has taken to promote the public's recognition of DRIVE PITCH & PUTT as a brand.

This court agrees with defendant that the length and manner of Kids Golf's use of its mark was not sufficiently sustained or pervasive in relation to the relevant golf and youth communities. The nature and extent of plaintiff's advertising and promotion was less than overwhelming prior to 1997. Plaintiff may have taken substantial steps to promote a connection between the mark and its business in the public's mind through pursuit of its trademark applications and news coverage, but those efforts were in all likelihood geared towards promoting Kids Golf's competition in general. Finally, plaintiff lacks any evidence that the public actually associates the mark with Kids Golf's business.

While TGC's actions may indicate that it intentionally copied the mark from Kids Golf, the terms were merely descriptive words in the public domain. The confusion that plaintiff claims exists is irrelevant unless the mark is protectible in the first instance. *See Small Business Assistance Corp. v. Clear Channel Broad.*, 210 F.3d 278, 279–80 (5th Cir.2000). The fact that a number of consumers have been calling Kids Golf believing that they are reaching TGC would tend to indicate, if anything, that the public associates the terms of the mark with TGC, and not plaintiff's business. While Kids Golf began operations in West Palm Beach (a location significant for its high concentration of golf players and organizations) and made connections to a number of golf organizations, journals, and

magazines with substantial circulation among the golf community, none of this indicates that the term became associated with Kids Golf. Finally, Kids Golf's moves to protect its trademark efforts at promotion and advertising are not as significant as whether those efforts have succeeded in establishing the mark. There is no indication that they have done so.

The court therefore finds that plaintiff cannot establish that its mark DRIVE PITCH & PUTT has acquired a secondary meaning with the relevant public. The court finds, as a matter of law, that defendant has no trademark rights in the term DRIVE PITCH & PUTT. Accordingly, there is no need to engage in an analysis of likelihood of confusion between the two marks.

### 2. Plaintiff's Other Claims

Since Kids Golf has failed to establish that it has a protectible interest in its mark, or that the mark has acquired secondary meaning, defendant is entitled to summary judgment with respect to the claims brought under the state Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* and the Florida common law of unfair competition. *See Investacorp,* 931 F.2d at 1521 (holding that the analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim); *La Dove, Inc. v. Playtex Jhirmack, Inc.,* 1991 WL 187473 at *3 (S.D.Fla.1991); *Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.,* 533 F.Supp. 75, 84 (S.D.Fla.1981).